## THOMAS G. RILEY
### v.
## JOHN DU BOIS.

SALE—DELIVERY.—Appellant was to sell appellee a cow at so much per pound live weight. She was picked out from among others in the pasture and was to be weighed on the latter's farm, and it appeared to be the intention that she should be paid for when taken away. The next day appellee's agents came for the cow and put appellee's ropes on her, but the cow broke loose from them and ran into a neighbor's field, where she was pursued by appellee's agents and appellant. Appellant caught and tied her to some willows, where appellee's agents agreed to come and kill her. They did not come until Sunday morning, when, it is claimed; they agreed to kill her and give so much per pound, dressed meat. When they went to look for the cow, she was found dead. *Held*, that if the cow was accepted by appellee where tied, the delivery was complete, and the loss resulting from the death of the cow would fall on appellee, no matter whether the price was paid or not; and the fact that the price was agreed on, if it was, on Sunday before they went to look at the cow where she had been left tied, would not change the status of the parties.

APPEAL from the Circuit Court of Livingston county; the Hon. FRANKLIN BLADES, Judge, presiding, Opinion filed February 29, 1884.

Mr. D. L. MURDOCK, for appellant; as to instructions, cited Adams v. Smith, 58 Ill. 421; Cusick v. Campbell, 68 Ill. 510; T. P. & W. R. R. Co. v. Patterson, 63 Ill. 305; Ogden v. Kirby, 79 Ill. 555; Sterling Hydraulic Co. v. Williams, 66 Ill. 393; I. C. R. R. Co. v. Maffitt, 67 Ill. 431; Village of Warren v. Wright, 3 Bradwell, 602.

Mr. G. W. PATTON, for appellee; that title does not pass by the mere contract of sale unless it affirmatively appears that such was the intention of the parties, cited Benjamin on Sales, 336, § 329; T. W. & W. Ry. Co. v. Chew, 67 Ill. 378; Hunt v. Eldridge, 5 Bradwell, 529.

LACEY, P. J. This suit was brought by the appellant against the appellee to recover the price of a cow, sold by ap-

Riley v. Du Bois.

pellant to appellee for four cents per pound, live weight; and she was picked out from among others in the pasture of appellant, and was to be weighed on the latter's farm on his scales. It appeared to be the intention that she should be paid for when taken away. This took place on Thursday, and the next morning appellee's man and agent came down to the farm, and they caught the cow and put appellee's ropes on her, but she was unmanageable and broke loose from the men with the rope on her and they could not handle her. She then ran onto the neighboring farm of Fugate, where she was pursued by appellant's and appellee's agents, and appellant caught and tied her to some willows, when appellee's agents agreed to come down that evening or the next day and kill her where she was, but did not come until Sunday morning following, when, as appellee claims, but is denied by appellant, they agreed that they would kill her and give seven cents per pound dressed meat; but afterward, when they went on Sunday morning to look after the cow she was found dead. If the cow was accepted by appellee where tied, the delivery was complete and the loss resulting from the death of the cow would fall on appellee, no difference whether the price was paid or not; and the fact that the price was agreed on, if it was, on Sunday morning before they went to look at the cow where left tied, could make no difference, or change the status of the parties. This fact and principle of law was ignored by appellee's instruction No. 5, which was erroneous and highly misleading.

At the time the cow was tied at the willows, appellee agreed to kill her there, and employed Fugate to water her, and she was tied with appellee's ropes. By the agreement to kill the cow at the willows any claim appellant might have for payment before delivery was waived, of necessity; because, as the matter then stood, the price could not be ascertained because she could not be weighed on the scales. It must have been the intention that the title to the cow should pass as manifested by the agreement to kill her, and appellee's putting Fugate in charge of her. It appears to us the verdict was manifestly against the weight of the evidence.

The judgment is therefore reversed and the cause remanded.

Reversed and remanded.